# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **PROTEGRITY CORPORATION**, a Cayman Islands company, and **PROTEGRITY USA, INC.**, a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> **ELAVON INC.**, <br><br> Defendant. | Case No. <br><br> **JURY DEMAND REQUESTED** |

## COMPLAINT

Plaintiffs, Protegrity Corporation and Protegrity USA, Inc. (collectively "Plaintiffs" or "Protegrity"), files this Complaint against Defendant, Elavon Inc. ("Defendant" or "Elavon"), alleging as follows:

## PARTIES

1.  Protegrity Corporation is a corporation incorporated under the laws of the country of the Cayman Islands, with its principal operating subsidiary being Protegrity USA, Inc. Protegrity USA, Inc. is a Delaware corporation with its principal place of business at 5 High Ridge Park, 2nd Floor, Stamford, CT 06905.

2.  On information and belief, Elavon is a Georgia corporation with its principal place of business at 2 Concourse Pkwy NE, Ste 800, Atlanta, GA 30328-5588.  Elavon may be served through its registered agent, C T Corporation System, at 289 S Culver St, Lawrenceville, GA, 30046-4805.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Protegrity's claims for breach of contract, copyright infringement, and misappropriation of trade secrets pursuant to 17 U.S.C. § 501, 18 U.S.C. § 1836, and 28 U.S.C. § 1367. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because, on information and belief, this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

4.  The Court has personal jurisdiction over Elavon because its primary place of business is located in the Northern District of Georgia and because the acts of breach, infringement, and misappropriation occurred in this district. Elavon also submitted to the personal jurisdiction of this Court in section 18.15 of the "Software License and Professional Services Agreement" (the "Agreement") entered into by the parties on March 23, 2012.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(c) and 1400(a) because Elavon resides in the Northern District of Georgia.

## BACKGROUND

6. Protegrity develops, markets, and licenses software relating to tokenization and other types of protection with regard to sensitive personal information such as banking information. Tokenization is the act of substituting a randomly-generated character string that has no inherent value in the place of data which has value. Such software includes Protegrity Enterprise Security Administrator, Token Server and proprietary application program interfaces ("API") (collectively the "Protegrity Software").

7. Elavon performs payment processing and gateway services wherein Elavon processes payments for transactions made between merchants and card holders. One of Elavon's products that performs this functionality is called the "SAFE-T Suite."

8. Elavon desired to use the Protegrity Software in order to provide tokenized payment processing services to its merchants. Elavon therefore entered into the Agreement to license the Protegrity Software.

9. The license grant under the Agreement allowed Elavon to integrate the Protegrity Software into its SAFE-T Suite software for the limited purpose of providing tokenized payment processing services to its merchants, to wit:

> 2.2   <u>Grant of License.</u> Unless otherwise set forth on the applicable Software Program Schedule and subject to the terms and conditions herein, Protegrity hereby grants Elavon and its Affiliates, a non-

exclusive, non-terminable, fully paid-up, perpetual, irrevocable (subject to Section 13.1 or 5.2), worldwide, non-transferable (except as specified in Section 18.10) license to (i) install and use the Software Programs (a) (as integrated with the Elavon Services as contemplated by this Agreement) on servers located at the Site(s) in the performance of the Combined Services in the Field as specified on the applicable Software Program Schedule in accordance with this Agreement, and (b) as reasonably necessary for the purposes of security back-up, relocation or disaster recovery and to operate in Elavon's development and/or testing environments, (ii) integrate the Software Programs with the Elavon Services to provide the Combined Services as specified on the applicable Software Program Schedule, (iii) utilize the Software Program APIs as reasonably necessary to integrate the Software Programs with the Elavon Services to create the Combined Services, as contemplated under this Agreement, (iv) utilize the Documentation in order to provide the applicable Combined Services, (v) copy the Software Programs (including, without limitation, the Software Program APIs) as reasonably necessary for installation of the Software Programs in accordance with this Agreement and as reasonably necessary for the purposes of security back-up, relocation or disaster recovery and to operate in Elavon's development and/or testing environments, and (vi) copy the Documentation as reasonably necessary in connection with Elavon's and its Affiliates' use of the Software Programs in accordance with this Agreement The license to Elavon and its Affiliates specified above includes the right for Elavon and its Affiliates to use the Software Programs to perform internal tokenization as necessary to provide the Combined Services in accordance with this Agreement. Protegrity acknowledges and agrees that (i) the Combined Services may be sold or provided to merchants either directly by Elavon or its Affiliates or indirectly by acting as a service bureau; and (ii) access to the Combined Services may be sold via resellers or remarketers of the Combined Services. For clarity, **UNLESS OTHERWISE AGREED IN WRITING BY THE PARTIES, ELAVON AND ITS AFFILIATES MAY NOT (I) USE OR PROVIDE ACCESS TO THE SOFTWARE PROGRAMS UNLESS THE SOFTWARE PROGRAMS ARE INTEGRATED WITH THE ELAVON SERVICES AND OFFERED AS A PART OF COMBINED SERVICES IDENTIFIED IN THE APPLICABLE SOFTWARE PROGRAM SCHEDULE, OR (II) PROVIDE ACCESS TO THE SOFTWARE PROGRAMS TO ANY END-USER NOT CONCURRENTLY PAYING FOR AND UTILIZING THE COMBINED SERVICES. UNLESS OTHERWISE AGREED IN WRITING BY PARTIES, ELAVON AND ITS AFFILIATES MAY NOT DISTRIBUTE, SUBLICENSE, TRANSFER, OR OTHERWISE MAKE AVAILABLE OR PROVIDE ACCESS TO THE SOFTWARE PROGRAMS ON A STANDALONE BASIS.**

10. The Agreement explicitly limited the restrictive nature of the license, to wit:

> 2.3  Restrictions. The Combined Services must contain the applicable Elavon Services and such Elavon Services must comprise significant and material value-added features and functionality that are substantially different from or in addition to the features and functionality of the Software Program. The Software Programs must be hosted by or on behalf of Elavon or an Elavon Affiliate. The Software Programs may not be hosted by End Users. Whenever Elavon is permitted to copy or reproduce all or any part of the Software Programs or Documentation, Elavon shall reproduce all titles, trademark symbols, copyright symbols and legends, and other proprietary markings thereon. Except as permitted under this Agreement, Elavon shall not transfer, sell, license, sublicense, distribute, outsource, rent or lease the Software Programs. Except as otherwise provided in this Agreement, Elavon shall not make or permit the making of any modifications, additions or enhancements to the Software Programs, or cause or permit the disassembly, decompilation or reverse engineering of the Software Programs in whole or in part (except that the foregoing restrictions do not apply to the extent that imposing such restrictions is prohibited by applicable law (e.g., including for purposes of interoperability), or to the extent that such modifications, additions, or enhancements are authorized in writing by or performed by Protegrity).

> Elavon shall not combine or otherwise associate the Software Program with Open Source Code in any manner that, when the Software Program as combined with the Open Source Code is used consistent with the license granted in Section 2.2 or distributed, would require the Software Program to be (a) subject to a right of disclosure or distribution in source code or object code form; (b) licensed for the purpose of making derivative works; or (c) redistributable.

11. Pursuant to the Agreement, Protegrity provided to Elavon a compiled copy of the Protegrity Software and the applicable software documentation ("Protegrity Software Documentation").

12. Paragraphs 2.2 and 2.3 of the Agreement and its Software Program Schedule (Exhibit A-1 to the Agreement) only allowed Elavon to integrate the Protegrity Software with its software for providing payment processing and gateway services (defined in the Agreement as "Combined Services").

13. Paragraphs 2.2 and 2.3 of the Agreement explicitly precluded Elavon from distributing, sublicensing, transferring or otherwise making available the Protegrity Software and Protegrity Software Documentation to anyone who would use the Protegrity Software on a standalone basis.

14. On information and belief, Elavon has materially breached the Agreement by distributing, sublicensing, transferring or otherwise making available the Protegrity Software and Protegrity Software Documentation to entities beyond the scope of the Grant of Rights of Paragraph 2.2 and in violation of the Restrictions of Paragraph 2.3.

15. Elavon's distribution, sublicense, transfer or otherwise making available the Protegrity Software to entities beyond the scope of the Grant of Rights of Paragraph 2.2 and in violation of the Restrictions of Paragraph 2.3, is without license or approval of Protegrity, and therefore constitutes copyright infringement and misappropriation of trade secrets.

16. All intellectual property rights relating to the Protegrity Software and Protegrity Software Documentation remained the exclusive property of Protegrity at all times.

17. On January 31, 2017, representatives from Protegrity and Elavon met to discuss the scope of Elavon's use of the Protegrity Software. It was determined that in violation of the Grant of Rights of Paragraph 2.2 and in violation of the Restrictions of Paragraph 2.3, Elavon was essentially acting as an original equipment manufacturer ("OEM"), reselling the Protegrity Software and Protegrity Software Documentation to entities who would perform the processing and gateway services themselves in lieu of Elavon.

18. On February 13, 2017, Protegrity's CEO, Suni Munshani, sent a letter to Wally Mlynarski requesting information regarding the scope of Elavon's and its customers use of the Protegrity Software in an effort to better understand the scope of Elavon's use. None of the requested information has been provided.

19. Protegrity USA, Inc. and Protegrity Corporation are the claimants of U.S. Copyright Registration No. TX 8-353-693 entitled "Token Server, Product Code: TokenServer_PAP-ALL-32-x86-ALL-nCPU_6.0.3.499" (the "'693 Registration"). The '693 Registration is attached hereto as **Exhibit A**.

20. Protegrity USA, Inc. and Protegrity Corporation are the claimants of U.S. Copyright Registration No. TX 8-351-939 entitled "Protegrity Enterprise Security Administrator, Product Code: EnterpriseSecurityAdministrator ESA_PAP-ALL-32_x86-ALL-nCPU_6.0.3.1162" (the "'939 Registration"). The '939 Registration is attached hereto as **Exhibit B**.

## CAUSES OF ACTION
### Claim I – Breach of Contract

21. Protegrity incorporates paragraphs 1-20 as if fully set forth herein.

22. Protegrity and Elavon entered into the Agreement with valuable consideration.

23. Elavon has breached the Agreement as noted above in Paragraphs 13 an 14 of this Complaint.

24. Elavon has also breached the Agreement by failing to provide reports detailing the entities to whom Elavon has provided the Protegrity Software and Protegrity Software Documentation.

25. All conditions precedent for instituting suit for breach of the Agreement (e.g., the Agreement's Paragraph 16 <u>Dispute</u>) have been fulfilled.

26. Protegrity is entitled to recover damages, expenses of litigation, and attorneys' fees from Elavon for its breach of contract.

## **Claim II – Copyright Infringement**

27. Protegrity incorporates paragraphs 1-20 as if fully set forth herein.

28. Elavon has infringed the '693 Registration by reproducing and/or distributing Protegrity Software and Protegrity Software Documentation without approval or authorization from Protegrity.

29. Elavon has infringed the '939 Registration by reproducing and/or distributing Protegrity Software and Protegrity Software Documentation without approval or authorization from Protegrity.

30. At a minimum, Elavon acted with willful blindness to, or in reckless disregard of, Protegrity's copyrights.

31. As a result of Elavon's wrongful conduct, Protegrity is entitled to recover its actual damages and Elavon's profits attributable to the infringement.

32. Protegrity is further entitled to injunctive relief and an order impounding all infringing materials. Protegrity has no adequate remedy at law for Elavon's wrongful conduct because, among other things: (a) Protegrity's

copyrights are unique and valuable property which have no readily determinable market value; (b) Elavon's infringement harms Protegrity such that Protegrity could not be made whole with any monetary award; and (c) Elavon's wrongful conduct, and the resulting damage to Protegrity, is continuing.

### Claim III – Misappropriation of Trade Secrets Pursuant to the Defend Trade Secrets Act

33.     Protegrity incorporates paragraphs 1-20 as if fully set forth herein.

34.     Protegrity Software and Protegrity Software Documentation includes trade secrets as contemplated by the Defend Trade Secrets Act ("DTSA"). 18 U.S.C. § 1839(3).

35.     Elavon misappropriated the trade secrets by disclosing the Protegrity Software and Protegrity Software Documentation to unlicensed third parties in contravention of the Agreement.

36.     Elavon knew or should have known that it was under a duty to maintain the secrecy and/or limit the use of the trade secrets.

37.     The Agreement defines Protegrity Confidential Information to include Protegrity Software and Protegrity Software Documentation.

38.     Elavon was unjustly enriched by virtue of its misappropriation.

39.     Protegrity is entitled to recover its damages and any unjust profits earned by Elavon that does not adequately meet Protegrity's damages.

Alternatively, Protegrity is entitled to a reasonable royalty for the unauthorized disclosure or use of its trade secrets.

40. Protegrity is entitled to exemplary damages and its attorneys' fees.

### **Claim IV – Misappropriation of Trade Secrets Under the Georgia Trade Secrets Act**

41. Protegrity incorporates paragraphs 1-20 as if fully set forth herein.

42. Protegrity Software and Protegrity Software Documentation includes trade secrets as contemplated by the Georgia Trade Secrets Act ("GTSA").

43. Elavon misappropriated the trade secrets by disclosing the Protegrity Software and Protegrity Software Documentation to unlicensed third parties in contravention of the Agreement.

44. Elavon knew or should have known that it was under a duty to maintain the secrecy and/or limit the use of the trade secrets.

45. The Agreement defines Protegrity Confidential Information to include Protegrity Software and Protegrity Software Documentation.

46. Elavon was unjustly enriched by virtue of its misappropriation.

47. Protegrity is entitled to recover its damages and any unjust profits earned by Elavon that does not adequately meet Protegrity's damages. Alternatively, Protegrity is entitled to a reasonable royalty for the unauthorized disclosure or use of its trade secrets.

48. Protegrity is entitled to exemplary damages and its attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(a) Trial by jury as to all issues;

(b) Damages;

(c) Prejudgment interest at the rate allowed by law;

(d) Reasonable attorneys' fees and costs; and

(e) All other relief to which it may be entitled.

Respectfully submitted this __10th__ day of January, 2018.

/s/ David M. Pernini
David M. Pernini
Georgia Bar No. 572399
Vernon M. Strickland
Georgia Bar No. 345346
WARGO & FRENCH, LLP
999 Peachtree Street, NE
26th Floor
Atlanta, Georgia 30309
Telephone: (404) 853-1500
Facsimile: (404) 853-1506
dpernini@wargofrench.com
vstrickland@wargofrench.com

Stefan V. Stein
(*Pro Hac Vice to be filed*)
GrayRobinson, P.A.
401 East Jackson Street
Suite 2700
P.O. Box 3324 (33601-3324)

-12-

Tampa, Florida 33602
Telephone: (813) 273-5000
Facsimile: (813) 273-5145
stefan.stein@gray-robinson.com

*Counsel for Plaintiffs Protegrity Corporation and Protegrity USA, Inc.*

## **RULE 7.1.D CERTIFICATE**

The undersigned counsel certifies that this document has been prepared with Times New Roman 14-point font in accordance with Local Rule 5.1.C.

/s/ David M. Pernini
David M. Pernini
