# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

PROTEGRITY CORPORATION,     *
a Cayman Islands company, and     *
PROTEGRITY USA, INC., a Delaware   *
corporation,     *
    *
       Plaintiffs,     *
    *
    v.     *     1:18-CV-00140-ELR
    *
ELAVON INC.,     *
    *
       Defendant.     *
    *

---

# O R D E R

---

Presently before the Court are several matters. The Court's rulings and conclusions are set out below.

## I.    Background

This case arises from a soured business relationship between Plaintiffs Protegrity Corporation, its United States subsidiary, Protegrity USA, Inc. (collectively "Protegrity"), and Defendant Elavon Inc. Compl. [Doc. 1].

### A.    Factual Background

As overview, Plaintiffs develop and license software related to tokenization. See Pls.' Statement of Material Facts ¶¶ 6–9 [Doc. 44-1] ("Pls.' SOMF").

Tokenization is a process which helps protect sensitive information such as banking data and other financial transaction information by inserting a random character string in place of the sensitive information when transmitting data.  See Compl.[1] Defendant performs payment processing services for transactions made between merchants and credit card holders.  Pls.' SOMF ¶ 4.

Defendant entered into a Licensing Agreement ("Agreement") with Plaintiffs to use Plaintiffs' tokenization software.   Def.'s Statement of Material Facts ¶ 1 [Doc. 40-1] ("Def.'s SOMF").  The Agreement allowed Defendant to incorporate Plaintiffs' software into Defendant's own products.  Pls.' SOMF ¶ 6.  However, the Agreement prohibited Defendant from selling Plaintiffs' unincorporated software to third parties.  Id. ¶ 9; see also Agreement [Doc. 40-2].  Plaintiffs allege Defendant provided third parties access to Plaintiffs' software ("Software") and the documentation accompanying the software ("Software Documentation"), which was beyond the scope allowed in the Agreement.  Pls.' Resp. to Def.'s Statement of Material Facts ¶ 6 [Doc. 44-1] ("Pls.' Resp. to Def.'s SOMF").

Plaintiffs base their allegations, in part, on a communication it received from the Langford Hotel.  Pls.' SOMF ¶¶ 4–5.   The Langford Hotel is a merchant and one of Defendant's customers.  Id.  In March 2016, Defendant entered into several

---

[1] The Court cites to the Complaint in this section to provide the necessary context without making any determination on the factual accuracy stated herein.

contracts with the Langford Hotel where it agreed to facilitate the transmission of information related to transactions used by the Langford Hotel. Def.'s SOMF ¶¶ 2–5. According to Defendant, "all transactions that resulted from Elavon's contracts with the Langford Hotel flowed through Elavon's central datacenters located in Knoxville and Atlanta"—meaning that all of Plaintiffs' Software was maintained on Defendant's secure servers located in Knoxville, Tennessee, or Atlanta, Georgia. Id. ¶ 5. Defendant insists that it did not provide a copy of Plaintiffs' Software or Software Documentation to the Langford Hotel or any other customer. Id. ¶ 6

However, Plaintiffs allege otherwise. According to Plaintiffs, the Langford Hotel was using Plaintiffs' software when it received the following error message:



CC Token Failed – PROTEGRITY ERROR. Pls.' SOMF ¶ 10; see also [Doc. 44-5]. Plaintiffs argue this error message could have only resulted from their software being housed in the Langford Hotel's servers, in violation of the Agreement between

3

Plaintiffs and Defendant. Pls.' SOMF ¶¶ 6–13. Consequently, Plaintiffs claim that Defendant breached their Agreement and impermissibly distributed Plaintiffs' intellectual property. See id. ¶¶ 8–13.

Defendant contends that Plaintiffs have misinterpreted the "PROTEGRITY ERROR" message because the software that generated the message was running at its facilities in Knoxville or Atlanta; thus, the Langford Hotel could not have accessed Plaintiff's software in any way. See Def.'s SOMF ¶ 7. Further, Defendant explains that "Elavon's system returns error messages that can be displayed remotely by a merchant's POS/PMS systems." Id. ¶ 8. Accordingly, Defendant asserts that no wrongdoing occurred.

### B.     Procedural History

On January 10, 2019, Plaintiffs filed a Complaint against Defendant alleging breach of contract, copyright infringement, and trade secret misappropriation pursuant to both the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), *et seq.*, and the Georgia Trade Secrets Act ("GTSA"), O.C.G.A § 10-1-761(4), *et seq*. Compl. at 7–10. On July 5, 2019, thirty (30) days after the close of discovery, Defendant moved for summary judgment on Plaintiffs' claims.     [Doc. 40]. Defendant also filed an unopposed motion to seal in conjunction with the summary

judgment briefing. [Doc. 42].[2]  In response, Plaintiffs filed a Motion for Leave to Amend the Complaint, seeking to add Agilysys Inc. as a defendant [Doc. 45], and a Motion to Amend Scheduling Order and Reopen Discovery. [Doc. 46]. All motions are now ripe for the Court's review.

## II.    Motions for Leave to Amend the Complaint, and Amend the Scheduling Order and Reopen Discovery

Because the outcome Defendant's Motion for Summary Judgment hinges on the Court's rulings concerning Plaintiffs' motions to amend the complaint and reopen discovery, the Court will address the latter motions first.

### A.    Motion for Leave to Amend Complaint

The Court turns first to Plaintiffs' Motion for Leave to Amend Complaint. [Doc. 45].  Plaintiffs move to amend their Complaint and add Agilysys Inc. as a defendant in this case.  [Id.]  According to Defendant, Agilysys is a "remarketer selling access to Elavon services."  [See Doc. 40-5].  However, upon independent investigation, Plaintiffs claim that "Agilysys is not a remarketer or reseller, but rather, Agilysys incorporates its payment processing services with Elavon's Services, in violation of the Software License between Protegrity and Elavon." [Doc. 45 at 2].  Therefore, Plaintiffs seek to amend the Complaint and add Agilysys as a defendant.  [Id. at 6].  Although, Plaintiffs filed this motion on July 30, 2019,

---

[2] For good cause shown, and noting no opposition, the Court grants Defendant's motion to seal. [Doc. 42].

nearly eight (8) weeks after discovery ended, they argue that any delay was excusable. [Id. at 5-6].

### a.     Legal standard

Plaintiffs' motion to amend is governed by Federal Rule of Civil Procedure 15.  Pursuant to Rule 15(a)(2), a party may amend its pleading after the filing a responsive pleading "only with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(a)(2).  Rule 15(a) further provides that leave to amend shall be freely given "when justice so requires."  See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court should deny leave to amend only where the amendment will result in undue delay, bad faith, undue prejudice, a repeated failure to cure deficiencies by amendments previously allowed, or futility.  Id.

Regarding undue delay, the Eleventh Circuit has repeatedly held that it is not an abuse of discretion for a district court to deny a party leave to amend where the party "unduly delayed" in moving to amend the complaint. See Lowe's Home Ctrs., Inc. v. Olin Corp., 313 F.3d 1307, 1315 (11th Cir. 2002) ("Furthermore, it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions."); Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000) (holding that district court did not abuse its discretion in denying leave to amend when the plaintiff moved to amend over a year after filing

the original complaint and eight months after the time specified in the scheduling order passed for amending pleadings).   Additionally, "[i]t is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid impending adverse summary judgment." Lowe's, 313 F.3d at 1315.

### b.    Discussion

In this case, the Court finds that Plaintiffs have "unduly delayed" in moving to amend the Complaint.  Plaintiffs filed their Complaint on January 10, 2018, and discovery ended on June 5, 2019.  [See Doc. 30].  On July 30, 2019, eighteen (18) months after filing the Complaint; eight weeks (8) after the close of discovery; four (4) months after learning that Agilysys was a potential defendant in this action;[3] and facing summary judgment, Plaintiffs filed their motion requesting leave of Court to amend the Complaint.  [See Doc. 46].  This undue delay is fatal to Plaintiffs' efforts to amend the Complaint at this late stage in the proceedings.  See Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1250 (11th Cir. 2015) ("A district court may find undue delay when the movant knew of facts supporting the new claim long before

---

[3] The Court notes that the Parties disagree as to when Plaintiffs discovered the facts that form the basis for their proposed amended complaint.  Defendant contends that Plaintiffs have known about its relationship with Agilysys for years.  [See Doc. 48 at 7-9].  On the other hand, Plaintiffs contend they only learned that Agilysys would be a necessary party on March 8, 2019, when they received Defendant's Supplemental Answers to Protegrity's First Set of Interrogatories.  [See Doc. 49 at 11].  Regardless of which date Plaintiffs discovered facts pertaining to Agilysys, the Court's conclusion remains the same because the Court finds that even if Plaintiffs learned about Agilysys on the later date, they unduly delayed in requesting leave to amend.

movant requested leave to amend, and amendment would further delay the proceedings.") (internal marks and citations omitted).

This is not a case where Defendant hid the identity of another defendant before Plaintiffs had an opportunity to make any timely motions. Instead, Defendant made proper disclosures during the discovery period on March 8, 2019. [Doc. 40-5 at 4]. Plaintiffs, however, neglected to act on this information for months and only moved to amend the Complaint after the close of discovery and after Defendant moved for summary judgment. [See Docs. 45; 45-2 at 1-4]. As a result of Plaintiffs' undue delay in moving to amend the Complaint, the Court denies Plaintiffs' motion to amend.[4] See Valpak Direct Mktg. Sys. v. Maschino, 349 F. App'x 368, 370–371 (11th Cir. 2009) (holding that plaintiff's motion to amend was properly denied when "the facts underlying the proposed amendment were actually known or could have been discovered with the exercise of due diligence in advance of the amendment deadline").

**B.    Motion to Reopen Discovery**

Next, the Court addresses Plaintiffs' Motion to Amend Scheduling Order and Reopen Discovery. [Doc. 46].

---

[4] Moreover, the Court finds that Defendant will suffer prejudice if the Court allows Plaintiffs to file an amended complaint because this case has been pending for two years and an amendment would likely involve new theories of recovery and additional discovery. See Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1186 (11th Cir. 2013) (noting that "prejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery") (internal quotation marks and citation omitted).

a.    **Legal standard**

"When a party fails to complete discovery in time, it may move to reopen discovery and the court may, 'for good cause,' grant the motion if the party shows that it failed 'because of excusable neglect.'" EarthCam, Inc. v. OxBlue Corp., 703 F. App'x. 803, 813 (11th Cir. 2017) (citing FED. R. CIV. P. 6(b)(1)(2)). Thus, to justify reopening discovery, Plaintiffs must show both good cause for extending discovery beyond the June 5, 2019 deadline, and excusable neglect for their failure to move for an extension before said deadline passed. Sweet v. Lockheed Martin Corp., No. 1:08-CV-2094-WBH-SSC, 2009 WL 10664952, at *2 (N.D. Ga. Aug. 21, 2009). A decision concerning whether to extend time for discovery is within the sound discretion of the trial court. Patterson v. U.S. Postal Serv., 901 F.2d 927, 929 (11th Cir. 1990). However, "motions for extension of discovery time are treated with special disfavor if filed after the discovery completion date[.]" Tiya v. State Farm Fire & Cas. Co., No. 1:14-CV-01314-RGV, 2014 WL 12069849, at *1 (N.D. Ga. Nov. 20, 2014) (internal marks and citations omitted).

b.    **Analysis**

The Court turns first to determine if Plaintiffs have shown excusable neglect. Courts consider four (4) factors to determine whether a party has shown excusable neglect: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including

whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

After considering all the factors, the Court finds that Plaintiffs have failed to show excusable neglect.  First, prejudice to Defendant is presumed because Defendant moved for summary judgment before Plaintiffs filed their motion to reopen discovery.  See Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x 683, 686 (11th Cir. 2013) (affirming the district court's denial of a motion to reopen discovery because "the [defendant] would have been prejudiced by additional discovery [since] it had already filed its motion for summary judgment").  Second, the length of delay was not trivial.  As noted above, discovery closed in this case on June 5, 2019, and Plaintiffs filed their motion nearly eight (8) weeks later, on July 30, 2019.  [See Doc. 46 at 6].

As for the third factor, Plaintiffs have not demonstrated that the reason for the delay was beyond their own control.  See In re R. J. Groover Constr., LLC, 411 B.R. 484, 490 (Bankr. S.D. Ga. 2008) (citing Dimmitt v. Ockenfels, 407 F.3d 21, 24 (1st Cir. 2005) ("[A]mong the factors enumerated in Pioneer, by far the most critical is the asserted reason for the mistake.")).  Plaintiffs claim they halted discovery because they were waiting for Defendant to substantively respond to a 30-day cure letter they sent on March 29, 2019.  [See Doc. 46 at 6].  Because Plaintiffs believed

that Defendant was violating the Software License Agreement, they sent a letter giving Defendant a "30 day opportunity to cure by terminating all services being provided to Agilysys and its End Users." [Doc. 45-3 at 1]. Plaintiffs argue that they could not take any further action until they were sure that Defendant would either: (1) cure the defect by terminating their relationship with Agilysys, or (2) refuse to cure any defect. Id. Since Defendant did not respond until after the cure period, on May 2, 2019, Plaintiffs claim they were prevented from taking discovery. [Doc. 49 at 11].

However, the Court finds Plaintiffs' argument unpersuasive. If Plaintiffs were aware of the need to stay discovery or extend discovery due to a delay, they should have promptly acted. At the very least, Plaintiffs could have requested to extend discovery on May 2, 2019, after they were informed that Defendant would not cure the alleged defect. [See Doc. 48-1, Ex. D at 1]. Instead, Plaintiffs waited until nearly three (3) months later, on July 30, 2019, after the close of discovery, to request to extend it. [See Doc. 46]. Not only did Plaintiffs wait to file the motion to extend discovery until after the close of discovery, they also waited until *after* Defendant moved for summary judgment. [See Docs. 40, 46]. Under these circumstances, the Court is not convinced that the delay was not "within the reasonable control of the movant." See Sweet, 2009 WL 10664952, at *3 (denying a motion to reopen

11

discovery where movant did not controvert nonmovant's contentions that the movant could have obtained the sought discovery during the discovery period).

Finally, the Court finds that the fourth factor also weighs against Plaintiffs. Plaintiffs have not shown good faith because they have not shown why they could not file for an extension before the close of discovery. See id. (finding a lack of good faith when the plaintiff had an opportunity to extend the discovery deadline before it passed but failed to do so); Tiya, 2014 WL 12069849, at *1 (stating that a finding of good cause depends on the diligence of the moving party).

Based on the foregoing, the Court finds that Plaintiffs do not demonstrate excusable neglect. Therefore, the Court denies Plaintiffs' Motion to Amend Scheduling Order and Reopen Discovery.[5] [Doc. 46].

## III.   Motion for Summary Judgment

Having denied Plaintiffs' motions, the Court turns now to Defendant's Motion for Summary Judgment. [Doc. 40].

### A.   Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if there is

---

[5] Because the Court finds that there is no excusable neglect, it does not need to reach the good cause analysis. See Sweet, 2009 WL 10664952, at *2 (noting that a motion to reopen discovery must be supported by both good cause and excusable neglect).

sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law.  Id.  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  Id. at 249.

When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  Id. at 324–26.  The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251–52.

## B.    Preliminary Matters

The Court begins by addressing some preliminary matters before turning to the substance of Defendant's motion.  It is well settled that a plaintiff may not raise a new claim in response to a motion for summary judgment.  <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004).   Federal courts also routinely hold that a plaintiff may not assert a new theory supporting an existing claim in response to a motion for summary judgment.  <u>See, e.g.</u>, <u>Aning v. Fannie Mae</u>, 633 F. App'x 773, 775 (11th Cir. 2016) (rejecting fraud claim when, in response to summary judgment, the plaintiff attempted to base it upon newly asserted allegations and facts); <u>Huddleston v. Sunshine Mills, Inc.</u>, 965 F. Supp. 2d 1298, 1310 (N.D. Ala. 2013) (refusing to consider the plaintiff's newly-asserted disparate impact theory of discrimination because "[i]t is well-established that a plaintiff may not raise a new claim or theory of relief for the first time in response to a defendant's motion for summary judgment") (citing <u>Gilmour</u>, 382 F.3d at 1315). The Eleventh Circuit Court of Appeals notes that when a plaintiff offers newly-asserted arguments and facts as late as the summary judgment stage, it is, in actuality, "an improper attempt to amend [the] complaint." <u>Dukes v. Deaton</u>, 852 F.3d 1035, 1046 (11th Cir. 2017), <u>cert. denied</u>, 138 S. Ct. 72 (2017).

In their response to Defendant's Motion for Summary Judgment, Plaintiffs attempt to assert new arguments about how Defendant breached its contract, namely

that Defendant impermissibly shared Plaintiffs' software with Agilysys.  [See Doc. 44].  Because these arguments are improperly raised in response to a motion for summary judgment, they will not be considered.  See Gilmour, 382 F.3d at 1315.

Additionally, in their response to Defendant's Motion for Summary Judgment, Plaintiffs rely on the declaration of Protegrity's Senior Vice President of Technology, Yigal Rozenberg, as evidence that there are genuine issues of material fact in dispute.  [See Docs. 44 at 7; 44-1].  Defendant argues that the Court should exclude Mr. Rozenberg and his declaration because Plaintiffs failed to disclose him as a witness as required by the federal and local rules.  [Doc. 47 at 1–2].

The Court agrees.  According to Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c).  Plaintiffs have offered no explanation for their failure to disclose Mr. Rozenberg during discovery, or their failure to supplement their discovery responses in accordance with the Federal Rules of Civil Procedure.  [See Doc. 44].  Furthermore, because discovery is closed, Plaintiffs' failure to provide this evidence cannot be cured.  See Reese v. Herbert, 527 F.3d 1253, 1264–66 (11th Cir. 2008) (concluding that the plaintiff's filing of his expert's affidavit seven weeks after the close of discovery and in response to the defendants'

summary judgment motion was impermissible because the defendants could no longer depose that expert or obtain a rebuttal expert).  Consequently, the Court sustains Defendant's objection with respect to Mr. Rozenberg's declaration and will not consider his testimony in evaluating Defendant's Motion for Summary Judgment. See White v. Alcon Film Fund, LLC, 52 F. Supp. 3d 1308, 1328-29 (N.D. Ga. 2014) (excluding the declaration of the defendant's witness because it failed to disclose the witness as required by federal and local rules); Fields v. Atlanta Indep. Sch. Sys., 916 F. Supp. 2d 1348, 1352 (N.D. Ga 2012) (refusing to consider the declaration of defendant's witness when evaluating a motion for summary judgment because defendant failed to properly disclose the identity of the witness during discovery).

### C.   Discussion

With these determinations in mind, the Court turns now to the respective claims.

#### a.   Count I: Breach of Contract

The Court first addresses Plaintiffs' Count I for breach of contract. Defendant moves for summary judgment on this claim, arguing that Plaintiffs have failed present any evidence that a breach of contract occurred. [Doc. 40].

Pursuant to Georgia law, the elements for a breach of contract claim are "the (1) breach and the (2) resultant damages (3) to the party who has the right to

complain about the contract being broken." <u>Kuritzky v. Emory Univ.</u>, 669 S.E.2d 179, 181 (Ga Ct. App. 2008) (citation omitted).[6]  In this case, there is no dispute that a valid contract exists.  <u>See</u> Answer ¶¶ 8–13. [Doc. 28].  Rather, the Parties dispute whether a breach occurred.  "A breach of contract may arise in any one of three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible." <u>Bd. of Regents of the Univ. Sys. v. Doe</u>, 630 S.E.2d 85, 93 (Ga. Ct. App. 2006).

Here, Plaintiffs allege that Defendant breached the contract by impermissibly giving third parties access to Plaintiffs' software. [Doc. 44 at 14].  However, the Court disagrees because Plaintiffs fail to provide any admissible evidence of breach.[7] As Defendant highlighted, there is nothing in the record, besides the pleadings, to support Plaintiffs' assertion that Defendant breached the Agreement.  <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) ("The moving party simply may show. . . there is an absence of evidence to support the non-moving party's case."). Because Defendant met its initial burden in showing that Plaintiffs' claim for breach of contract lacks evidentiary support, Plaintiffs must present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991) (explaining that when the

---

[6] The Parties do not dispute that Georgia law applies to Plaintiffs' claims.  [<u>See</u> Docs. 40; 44].

[7] Again, the Court will not consider Mr. Rozenberg's declaration because Plaintiffs failed to properly disclose him as a witness as required by the federal and local rules. <u>See</u> <u>Fields</u>, 916 F. Supp. 2d at 1352.

moving party demonstrates there is no issue of material fact, the burden shifts to the non-moving party).

Plaintiffs have failed to meet this burden because they cannot point to any admissible evidence that supports their claim. See Celotex, 477 U.S. at 322 (finding summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Without more, Plaintiffs' allegations in the pleadings do not support a finding that Defendant breached the contract. Accordingly, summary judgment on Plaintiffs' breach of contract claim is appropriate.[8]

b.   Count II: Copyright Infringement

The Court turns next to Plaintiffs' Count II, which alleges copyright infringement.   Again, Defendant moves for summary judgment on this issue claiming that Plaintiffs have failed to put forth any evidence with respect to this claim. "To establish copyright infringement, two elements must be proven:

---

[8] Further, there is no evidence on the record that Plaintiffs suffered any actual damages, the third necessary element for a breach of contract claim. Under Georgia law, proof of damages is an essential element for breach of contract, and failure to prove damages is fatal to a plaintiff's claim. Niloy & Rohan, LLC v. Sechler, 782 S.E.2d 293, 297 n.6 (Ga. Ct. App. 2016). Plaintiffs assert there is proof of actual damage through lost profits and the misappropriation of their trade secrets. [Doc. 44 at 14-15]. However, these allegations lack evidentiary support. To recover lost profits, Plaintiffs must show "the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery." Legacy Acad., Inc. v. JLK, Inc., 765 S.E.2d 472, 477 (Ga. Ct. App. 2014). Plaintiffs have not made that showing. Moreover, Plaintiffs have not proven any misappropriation. Thus, this lack of evidence is also fatal to Plaintiffs' breach of contract claim.

ownership of a valid copyright, and copying of constituent elements of the work that are original." Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 362 (1991)). Plaintiffs claim that Defendant infringed on two of their copyrighted works: (1) "'693 Registration" and (2) "'939 Registration." Compl. ¶¶ 28-29; [See Doc. 1-2].

Again, the Court disagrees. First, it is undisputed that Plaintiffs granted Defendant a license to integrate its software with Defendant's services. Compl. ¶¶ 8-9. This license creates an affirmative defense to copyright infringement. See Keyfer & Assocs. Inc. v. Brock, No. 1:07-CV-2297-CC, 2010 WL 11505875, at *16 (N.D. Ga. Mar. 30, 2010) ("[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement.") (internal marks and citation omitted). To survive summary judgment, Plaintiffs must then present evidence that Defendant improperly reproduced or distributed their software beyond the scope of the agreement. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 961 (11th Cir. 2009) (upholding district court's grant of summary judgment due to the existence of an implied license, which is an affirmative defense to a copyright claim). Although Plaintiffs point to the error message from the Langford Hotel as proof of copyright infringement, their unsupported allegations are not enough to create an issue of material fact. Smith v. St. Joseph's/Candler Health Sys., 770 F. App'x 523, 527 (11th Cir. 2019) ("Unsupported allegations are not

enough to establish a genuine issue of material fact to survive summary judgment."). Accordingly, the Court finds that Defendant is entitled to summary judgment on this claim.

        c.     <u>Counts III & IV: Misappropriation of Trade Secrets</u>

Lastly, the Court addresses Plaintiffs' Counts III and IV for Misappropriation of Trade Secrets Pursuant to the Defend Trade Secrets Act and Georgia Trade Secrets Act. "A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" <u>Capital Asset Research Corp. v. Finnegan</u>, 160 F.3d 683, 685 (11th Cir. 1998) (quoting <u>Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.</u>, 139 F.3d 1396, 1410 (11th Cir. 1998)). The DTSA requires the same showing, but with the additional requirement that the trade secret "is related to a product or service used in, or intended for use in, interstate or foreign commerce." <u>Agilysys, Inc. v. Hall</u>, 258 F. Supp. 3d 1331, 1348 (N.D. Ga. 2017) (quoting 18 U.S.C. § 1836(b)(1)).

Here, Defendant argues that Plaintiffs have failed to prove that: (1) their software qualifies as a trade secret, and (2) that Defendant misappropriated any purported trade secret. [Doc. 40 at 20]. The Court addresses each argument in turn.

First, whether an item constitutes a trade secret is a question of fact. <u>Insight Tech., Inc. v. FreightCheck, LLC</u>, 633 S.E.2d 373, 380 (Ga. Ct. App. 2006).

> To prove the existence of a trade secret, the plaintiff must show that it possessed information—which may include technical or nontechnical data, financial plans, customer lists, a product design, or product plans—that derives economic value from not being generally known or readily ascertainable to others, and that is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007) (internal marks and citation omitted). Furthermore "to be a trade secret, this information must also not be readily ascertainable by proper means, and it must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy." AirWatch LLC v. Mobile Iron, Inc., No. 1:12-CV-3571-JEC, 2013 WL 4757491, at *3 (N.D. Ga. Sept. 4, 2013) (internal marks and citations omitted).

In this case, Plaintiffs have not proven that their software is a trade secret. More specifically, Plaintiffs have not demonstrated: (1) that the software in question derives economic value from its secrecy, and (2) that they took reasonable efforts to maintain the secrecy of their software. Plaintiffs cite to the License Agreement as evidence that their software is a trade secret because they derive economic value from charging license fees for use of their software. [Doc. 44 at 18]. However, that argument, without more, fails because Plaintiffs have not shown that the software derives *independent economic value* from being a secret. See EarthCam, 703 F. App'x at 812 ("Declaring that something is confidential and a trade secret is not the same thing as providing evidence that the information (a) is not commonly known by or available to the public, [and] (b) derives economic value from not being

generally known.") (internal marks and citations omitted). "[C]onclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) (internal marks and citations omitted).

Moreover, although Plaintiffs cite to the confidentiality agreement as evidence that they took reasonable steps to maintain the secrecy of their software, that showing is not enough. See Diamond Power Int'l., 540 F. Supp. 2d at 1335 (holding that the signing of confidentiality agreements on its own do not demonstrate that a company's efforts to maintain secrecy were reasonable). Absent more evidence, Plaintiffs' argument that their software is a trade secret fails.

Alternatively, the Court finds that Plaintiffs have also failed to establish the second factor—that Defendant misappropriated any trade secret. "A defendant misappropriates a trade secret when, among other things, it discloses or uses a trade secret of another, without express or implied consent, knowing that at the time of disclosure or use the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Penalty Kick Mgmt. v. Coca Cola Co., 318 F.3d 1284, 1292 (11th Cir. 2003). In this case, regardless of whether Plaintiffs' software was a trade secret, the circumstances clearly demonstrate that Defendant was under a duty to maintain its secrecy and limit its use. [See Doc. 40-2]. Thus, the second element of Plaintiffs' misappropriation claim hinges on whether

Defendant actually disclosed Plaintiffs' software to a third party—an allegation that Defendant vigorously denies. [Doc. 40 at 24–25].

Here, Plaintiffs have no evidence that a disclosure occurred; instead, they only submit allegations. [See Doc. 44 at 19–20]. Consequently, Plaintiffs fail to demonstrate that Defendant is liable for misappropriation. Penalty Kick Mgmt., 318 F.3d at 1293–1294 (upholding district court's grant of summary judgment when plaintiff provided no direct evidence that defendant disclosed information that enabled a third party to learn the trade secret).

Accordingly, because Plaintiffs do not put forth enough evidence to create a genuine issue of material fact for trial, the Court grants summary judgment in Defendant's favor on this claim. See Payne v. DeKalb Cty., 414 F. Supp. 2d 1158, 1168–69 (N.D. Ga. 2004) ("[T]o survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.").

## IV.   Summary

In sum, after a thorough review of the Parties' briefing and evidence, the Court denies Plaintiffs' Motion for Leave to Amend the Complaint [Doc. 45] and Motion to Amend Scheduling Order and Reopen Discovery. [Doc. 46]. The Court also grants Defendant summary judgment on each of Plaintiffs' claims [Doc. 40] and grants Defendant's Motion for Leave to File Under Seal. [Doc. 42]. Because

Plaintiffs do not prevail on any of its anchor claims, their derivative claim for attorney's fees must also fail.  See Gilmour v. Am. Nat'l Red Cross, 385 F.3d 1318, 1324 (11th Cir. 2004) (explaining that a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 requires a valid underlying claim).

## V.    Conclusion

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 40]; **GRANTS** Defendant's Motion for Leave to File Matters Under Seal [Doc. 42]; **DENIES** Plaintiffs' Motion for Leave to Amend Complaint [Doc. 45]; and **DENIES** Plaintiffs' Motion to Amend Scheduling Order and Reopen Discovery. [Doc. 46]. The Court **DIRECTS** the Clerk to **SEAL** Exhibits 1–4 of Defendant's Statement of Uncontested Material Facts. [Docs. 41-1; 41-2; 41-3; 41-4]. Finally, the Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendant and close this case.

**SO ORDERED**, this *19th* day of February, 2020.

Eleanor L. Ross
United States District Judge
Northern District of Georgia

24